UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | Civil Action No. 1:18-cv-4439 |
| GFOUR PRODUCTIONS, LLC, a Florida limited liability company, and SPOTLIGHT RIGHTS, LLC, a Florida limited liability company, | **COMPLAINT FOR STATE AND FEDERAL TRADEMARK INFRINGEMENT; DILUTION; TRADE DRESS INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; FALSE ADVERTISING; DECEPTIVE TRADE PRACTICES; UNFAIR COMPETITION** |
| Plaintiffs | |
| v. | |
| OFF BROADWAY TOURING, LLC, a New York limited liability company, and JOE CORCORAN PRODUCTIONS, INC., a New York corporation, | JURY TRIAL DEMANDED |
| Defendants | |

GFOUR PRODUCTIONS, LLC and SPOTLIGHT RIGHTS, LLC (hereinafter collectively referred to as "Plaintiffs") bring forth this action against OFF BROADWAY TOURING, LLC and JOE CORCORAN PRODUCTIONS, INC. (hereinafter collectively referred to as "Defendants") and complain and allege as follows:

## INTRODUCTION

1.      This is an action for federal trademark infringement, trade dress infringement and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.; common law trademark infringement under the laws of New York; and unfair competition under the laws of New York against Off Broadway Touring, LLC and Joe Corcoran Productions, Inc.

## PARTIES

2.      Plaintiff Spotlight Rights, LLC is a Florida Limited Liability Company having a place of business at 1005 W. State Road 84, Suite 434, Fort Lauderdale, FL 33315.

1

3.      Plaintiff GFour Productions, LLC is a Florida Limited Liability Company having a place of business at 1005 W. State Road 84, Suite 434, Fort Lauderdale, FL 33315.

4.      Upon information and belief, Defendant Off Broadway Touring, LLC ("Off Broadway") was organized under the laws of the state of New York on October 11, 2017 as a limited liability company having a place of business at 600 W Brigantine Ave., Unit 320 Brigantine, NJ 08203.

5.      Upon information and belief, Defendant Joe Corcoran Productions, LLC ("Joe Corcoran") was organized under the laws of the state of New York on June 5, 1996 as a limited liability company having a place of business at 226 West 47th Street, 9th Fl., New York, NY 10036.

6.      Plaintiff reserves the right to add additional defendants as their identities become known.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1338 over the Lanham Act claims because the action alleges *inter alia* violations of federal statutes; and the Court has jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over the state law claims because they arise out of the same nucleus of operative fact and are so related to the federal cause of action that they form the same case or controversy.

8.      Venue is proper in this judicial district under 28 U.S.C. § § 1391, 1400(b) because a substantial part of the events giving rise to the claims raised in the lawsuit occurred in this judicial district, and because Defendants conduct business in this district and Defendants' actions have injured Plaintiffs whose shows are in this judicial district and Defendants are subject to jurisdiction in this district.

2

9.      Upon information and belief, this Court has jurisdiction over each and every one of the Defendants because Defendants committed acts of trademark infringement and unfair competition in this district, causing injury to Plaintiff in this state and district; and upon information and belief, Defendants have organized its LLCs and regularly transact business and have purposely targeted its activities in this state and district, including the advertising and sale of the services at issue through advertisements and promotions and via the Internet to New York residents and New York entities.  In addition, Defendants have purposely directed their actions to unlawfully trade off on Plaintiff's trademark and trade dress and used it for the promotion and advertising of their own show and to dilute and tarnish Plaintiff's trademark in violation of the Lanham Act, State Trademark and unfair competition laws.

10.     Personal Jurisdiction over Off Broadway Touring, LLC is found in New York at least because Off Broadway Touring, LLC is organized in New York and conducts business in New York.

11.     Personal Jurisdiction over Joe Corcoran Productions, LLC is found in New York at least because Joe Corcoran Productions, LLC is organized in New York, has offices in New York and conducts business in New York.

12.     Defendants have purposely availed themselves to this state and this district at least because they have promoted the show *The Manopause Boys* to consumers and theatres and theatre promoters in this state and district.

## FACTUAL BACKGROUND

13.     Plaintiff Spotlight Rights, LLC, is the owner of the famous musical production "*Menopause The Musical*" written by Jeanie Linders.  *Menopause The Musical* debuted March 28, 2001. The original cast members were Shelly Browne as the Power (later Professional)

Woman, Patti McGuire as the Iowa Housewife, Pammie O'Bannon as the Earth Mother and Wesley Williams as the Soap Star. The musical follows four women shopping for lingerie at a Bloomingdale's sale, and sing 25 songs about chocolate cravings, hot flashes, loss of memory, nocturnal sweats, and sexual predicaments. The lyrics parody popular music from the baby boomer era, and includes the numbers "Stayin' Awake" and "Puff, My God I'm Draggin'."  The show's success led to a number of productions across the country presented by theatrical producers GFour Productions, LLC, Plaintiff.

14.     Plaintiff Spotlight Rights, LLC, is the owner of the trademark MENOPAUSE THE MUSICAL and certain trademarks and copyrights related thereto ("IP") shown in Exhibit A.  The IP includes incontestable U.S. Trademark Registration Nos. 2,962,504; 3,354,640; 3,171,313; 3,354,641 for MENOPAUSE THE MUSICAL® for a variety of goods and services including production and exhibition of stage plays and musical shows and associated merchandise, and includes U.S Copyright Registration No. PAu00253588 for the show *Menopause The Musical*.  Spotlight Rights, LLC licenses its rights in the IP in the US and Canada to GFour Productions, LLC under an exclusive license to produce and present MENOPAUSE THE MUSICAL to live audiences.  As can be seen in Exhibit B, the website www.menopausethemusical.com shows that Plaintiff Spotlight Rights, LLC is the owner of MENOPAUSE THE MUSICAL and GFour Productions, LLC uses the trademark under license.

15.     Plaintiffs and its predecessors have expended considerable resources marketing and promoting it's highly successful *MENOPAUSE THE MUSICAL* show and MENOPAUSE THE MUSICAL® trademark, which is one of the longest continuously running off-broadway/traveling productions.  Spotlight Rights, LLC has expended considerable resources

developing a worldwide portfolio of trademark and copyright protection that covers the MENOPAUSE THE MUSICAL exclusive production and shows.

16.     Previously, a third party company named Hackett Miller Company, Inc. ("Hackett") promoted a show which was referred to as MANDROPAUSE which was scheduled to show in Florida and California.  Plaintiffs contested such use, and ultimately Plaintiffs and the proprietors of MANDROPAUSE became involved in a lawsuit which ultimately settled.

17.     As part of the Hackett settlement, Hackett switched the name MANDROPAUSE in the above referenced production to ANDROPAUSAL MAN and use of MANDROPAUSE and MANOPAUSE was expressly prohibited in connection with any shows.

18.     Plaintiffs have continuously used its MENOPAUSE THE MUSICAL® trademark since use began and has expended considerable resources promoting and advertising its brand.

19.     As a result of Plaintiffs' continuous use of Plaintiffs' MENOPAUSE THE MUSICAL® trademark, the inherent distinctiveness, the extent and duration of its use, geographic scope, extent of our advertising and sales, media publicity, exposure of the mark and consumer recognition, Plaintiffs' MENOPAUSE THE MUSICAL® trademark is famous in the industry.

20.     Defendants book, produce, promote, represent and advertise a live theatre musical show entitled "*The Manopause Boys*" featuring four main characters on the topic of menopause and the baby boomer era including comedy, music and dancing.

21.     Upon information and belief, Defendants adopted and used the names "MANOPAUSE THE MUSICAL" and "THE MANOPAUSE BOYS" in order to trade on the goodwill developed in MENOPAUSE THE MUSICAL® by Plaintiffs and Defendants have used MENOPAUSE THE MUSICAL® in its website, content, advertisements and marketing

5

materials in order to assist in confusing consumers looking for tickets for MENOPAUSE THE

MUSICAL® to purchase tickets for THE MANOPAUSE BOYS instead and to trade off on the

established good will of the Plaintiffs' MENOPAUSE THE MUSICAL® trademark and brand.

Attached as Exhibits C, D, F, G, H, and J is evidence of Defendants use of the names

"M**A**NOPAUSE THE MUSICAL", "THE MANOPAUSE BOYS" and "M**E**NOPAUSE THE

MUSICAL", e.g.,



22.     Defendants also used a disparaging quote in Defendants' marketing materials

and Defendants' website to promote Defendants' _The Manopause Boys_ show, specifically,

"Funnier than Menopause The Musical" and referenced Huffington Post as the reviewer of the

show when in fact the quote was not an official quote from a bona fide writer or critic of the

Huffington Post.  The disparaging quote is shown at Exhibit C.

23.     Upon information and belief, Defendants and/or their agents arranged for the

review shown at Exhibit C.

24.     Upon information and belief, Defendants and/or their agents paid for or provided

value or compensation to the author of the article in exchange for writing the article shown at

Exhibit C.

25.     Upon information and belief, the reviewer who wrote the article is not a bona fide

theatre critic.

26.     Plaintiffs contacted the Huffington Post and the Huffington Post removed the disparaging quote from its website, indicating that the quote was not a genuine review but instead arranged by Defendant.  A true and correct copy of the email is attached as Exhibit D and a screenshot with the removed link is shown at Exhibit E.

27.     Defendants have used Plaintiff's registered trademark MENOPAUSE THE MUSICAL® in Defendants' marketing materials and Defendants' website to promote Defendants' *The Manopause Boys* show, shown at Exhibits C, F, G, H.

28.      Defendants have used Plaintiff's registered trademark MENOPAUSE THE MUSICAL® in a disparaging manner in Defendants' marketing materials and Defendants' website for *The Manopause Boys*, shown at Exhibits C, F, G, H.

29.      On information and belief, Defendant Off Broadway has used Plaintiff's registered trademark MENOPAUSE THE MUSICAL® in a speech made to theatrical producers at *The Life of a Show After Off Broadway*.

30.     On information and belief, Defendant Off Broadway has used Plaintiff's registered trademark MENOPAUSE THE MUSICAL® in a disparaging manner in a speech made to theatrical producers at *The Life of a Show After Off Broadway*.

31.     Upon information and belief, Defendants used Plaintiff's MENOPAUSE THE MUSICAL® trademark in a disparaging manner in its website, content and marketing materials in order to dilute Plaintiffs' famous mark and show.

32.     Upon information and belief, Defendants used Plaintiffs' MENOPAUSE THE MUSICAL® trademark in a disparaging manner in its website, content and marketing materials in order to tarnish and destroy the commercial value of Plaintiff's mark as dilution by tarnishment is an attack on the reputation and positive image of a mark.

33.     On April 30, 2018, Plaintiffs contacted Defendant in writing and requested the removal of the infringing material. A true and correct copy of the email is attached as Exhibit I.

34.     On May 1, 2018, Defendant contacted Plaintiffs in writing and refused to cease and desist (Exhibit I).

35.     Upon information and belief, Plaintiffs and Defendants are competitors and Plaintiffs and Defendants provide related services, all of which are similar if not identical.

36.     Upon information and belief, Defendants' and Plaintiffs' services travel through almost identical commercial channels and are targeted at the same or substantially overlapping consumers and demographics because the shows provided are directed to similarly situated consumers and the productions feature four main characters on the topic of menopause and the baby boomer era including comedy, music and dancing.

37.     Upon information and belief, Defendants have or are actively seeking to promote their show to theaters who have previously hosted Plaintiff's productions.

38.     Upon information and belief, Defendants are specifically targeting and trying to book theaters who have in the past 5 years hosted MENOPAUSE THE MUSICAL in order to divert sales/bookings to Defendants which would otherwise be made to Plaintiff.

39.     Upon information and belief, Plaintiffs' and Defendants' services are supplied in the same or similar geographic areas, including the state of New York and the city of New York as well as throughout the United States.

40.     Upon information and belief, Defendants' activities have caused and continue to cause irreparable injury to Plaintiffs' reputation and goodwill.

41.     Upon information and belief, Defendants has profited and continue to profit from its unlawful acts.

42.     Defendants had notice of Plaintiffs' inherent trademark rights and Plaintiff's Federal Trademark Registration rights prior to the inception of Defendants' *The Manopause Boys* show.

43.     Upon information and belief, Defendants were aware of MENOPAUSE THE MUSICAL prior to their first use of *Manopause the Musical* and *The Manopause Boys*.

44.     The intentional and willful nature of Defendants' unlawful acts renders this an exceptional case.

45.     Defendants have not merely misappropriated Plaintiff's trademark; they have also endeavored to dilute and tarnish Plaintiff's trademark.

46.     These acts are among the many acts that reveal Defendants' scheme to misappropriate and unfairly exploit Plaintiff's IP and show for Defendants' benefit.

## COUNT I
## Federal Trademark Infringement

47.     Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

48.     Defendants' use of Plaintiffs' mark MENOPAUSE THE MUSICAL® in Defendant's marketing materials and Defendants' website for *The Manopause Boys*,  for its services, which are identical to Plaintiffs' Services, constitutes trademark infringement of Plaintiffs' Registrations for MENOPAUSE THE MUSICAL and gives rise to a likelihood of confusion, deception, and mistake among the public.

49.     Defendants use THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL in Defendant's marketing materials and Defendants' website for its services, which are identical to Plaintiffs' services, constitutes trademark infringement of Plaintiffs' Registrations for

9

MENOPAUSE THE MUSICAL and gives rise to a likelihood of confusion, deception, and mistake among the public.

50.     Upon information and belief, Defendants adopted and used the MENOPAUSE THE MUSICAL® and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL names with the willful purpose and intent of misleading the public and trading upon the goodwill and reputation associated with Plaintiffs' Registrations.

51.     These acts violate the United States Lanham Act and constitute infringement of Plaintiffs' registered trademark, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 *et seq.*

52.     As a result of Defendants infringing activities, the public is likely to be and has already been confused, misled or deceived as to the source, origin or sponsorship of Defendants' services, and Plaintiffs have suffered irreparable injury for which it has no adequate remedy at law.

53.     Upon information and belief, as a direct and proximate result of Defendants' actions in misappropriating Plaintiffs' trademark rights, Plaintiffs will need to conduct a corrective advertising campaign to alleviate existing and ongoing future confusion in the marketplace, in an amount to be determined.

## COUNT II
## Trade Dress Infringement

54.     Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

55.     Plaintiffs' *MENOPAUSE THE MUSICAL* show consists of four main characters and provides a live show of comedy, music and dancing on the topic of menopause and the

public associates MENOPAUSE THE MUSICAL with a live show of comedy, music and dancing on the topic of menopause associated with Plaintiffs.

56.     Plaintiffs' trade dress consists of the unique and creative show consists of four main characters and provides a live show of comedy, music and dancing on the topic of menopause under the title *MENOPAUSE THE MUSICAL* and trademark MENOPAUSE THE MUSICAL®.

57.     Defendants' copied Plaintiffs' trade dress by providing a live show consisting of four main characters providing comedy, music and dancing on the topic of menopause; and the wrongful use of the Plaintiffs' trade dresses in the manner described and shown is likely to cause confusion, to cause mistake, or to deceive customers and potential customers of the parties by suggesting an affiliation, connection or association of Defendants with Plaintiffs.

58.     Defendants' action, as set forth above, constitute trade dress infringement in violation of the Lanham Act 15 U.S.C. §1125.

59.     Upon information and belief, as a direct and proximate result of Defendants' actions in misappropriating Plaintiffs' trade dress, Plaintiffs have suffered actual damages in an amount yet to be determined, including but not limited to damages to Plaintiffs' reputation, loss of good will, lost sales and revenues, diminution in the value of Plaintiffs' business, and lost sales of Plaintiffs' related services as a result of Defendants' infringing activities.

60.     Upon information and belief, as a direct and proximate result of Defendants' actions in misappropriating Plaintiffs' trade dress, Plaintiffs will need to conduct a corrective advertising campaign to alleviate existing and ongoing future confusion in the marketplace, in an amount to be determined.

61.     Upon information and belief, as a direct and proximate result of Defendants'
actions in misappropriating Plaintiffs' trade dress, Defendants have made gross sales (and profits
thereon) from its wrongful activities as alleged herein, which belong in equity and should be
turned over to Plaintiffs, both as unjust enrichment from Defendants' wrongful acts, and/or as a
measure of Plaintiffs' damages.

62.     Defendants' acts have caused and will continue to cause irreparable harm to
Plaintiff unless restrained by this Court.  Plaintiffs have no adequate remedy at law. Accordingly,
Plaintiffs are entitled to an order enjoining and restraining Defendants, during the pendency of
this action and permanently thereafter, from all use of such trade dress.

## COUNT III
## False Designation of Origin

63.     Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of
this Complaint and incorporates them herein by reference.

64.     Defendants' use of the THE MANOPAUSE BOYS name constitutes offering for
sale and selling services in interstate commerce using false and misleading descriptions and
representations of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     Upon information and belief, Defendants adopted and used THE MANOPAUSE
BOYS with the knowledge that it was misleading, and deceptive, and with the intent to compete
unfairly with Plaintiffs and to misappropriate the goodwill of Plaintiffs.

66.     Defendants' copying of Plaintiffs' trademark and use of Plaintiffs'' trademark on
Defendants' website, marketing materials and advertisements constitutes passing off and false
designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     As a result of Defendants activities, the public is likely to be confused, misled, or
deceived about the sources of Defendants' services, and Plaintiffs are now and will continue to

suffer irreparable injury to its goodwill and reputation, for which it has no adequate remedy at law.

68.    Upon information and belief, as a direct and proximate result of Defendants' actions, Plaintiffs will need to conduct a corrective advertising campaign to alleviate existing and ongoing future confusion in the marketplace, in an amount to be determined.

**COUNT IV**
**Trademark Infringement – New York Common Law**

69.    Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

70.    This claim is against Defendants for common law trademark infringement.

71.    In addition to the Federal Registration owned by Plaintiff, as set forth above, Plaintiffs' MENOPAUSE THE MUSICAL® mark enjoys common law rights in New York and throughout the United States.  These rights are senior and superior to any rights which Defendants may claim.

72.    Defendants' use of MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL is intentionally designed to mimic Plaintiffs' MENOPAUSE THE MUSICAL® mark so as to cause confusion regarding the source of Defendants' services in that purchasers thereof will be likely to associate or have associated such show with, as with originating with, or as approved by Plaintiff, all to the detriment of Plaintiffs.

73.    Defendants' infringement will continue unless enjoined by the Court.

74.    Upon information and belief, as a direct and proximate result of Defendants' actions in misappropriating Plaintiffs' trademark rights, Plaintiffs will need to conduct a corrective advertising campaign to alleviate existing and ongoing future confusion in the marketplace, in an amount to be determined.

## COUNT V
## <u>Dilution</u>

75. Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

76. The MENOPAUSE THE MUSICAL® mark has become famous and distinctive throughout the United States and throughout the world through Plaintiffs' continuous and exclusive use of the mark in connection with Plaintiffs' services and goods.

77. Because Plaintiffs' services have gained a reputation for excellence, the MENOPAUSE THE MUSICAL mark, which is always used in connection with Plaintiffs' services defined above, have gained substantial fame, renown, and goodwill in the United States and throughout the world.

78. Defendants' use of MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL has caused and continues to cause irreparable injury to and dilution of the Plaintiffs' MENOPAUSE THE MUSICAL® marks' distinctive quality in violation of Plaintiffs' rights under 15 U.S.C. § 1125 (c). Defendants' use of MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL dilutes, blurs, and whittles away the distinctiveness of Plaintiffs' MENOPAUSE THE MUSICAL mark.

79. Defendants' use of MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL has caused and continues to cause irreparable injury to and dilution of the Plaintiffs' MENOPAUSE THE MUSICAL® marks' distinctive quality in violation of Plaintiffs' rights under 15 U.S.C. § 1125 (c). Defendants' use of MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL tarnishes Plaintiffs' MENOPAUSE THE MSUICAL mark.

80.     As a direct and proximate result, Plaintiffs have suffered and continues to suffer irreparable harm to its valuable MENOPAUSE THE MUSICAL mark.  Unless the MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL names are removed from all signage, advertising, websites, content, and marketing materials, Plaintiffs will continue to be irreparably harmed.

81.     Plaintiffs have no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if the signage, advertising, websites, content and marketing materials are not removed.

### COUNT VI
### Injury to Business Reputation; Dilution NY Gen. Bus. Law. §360-L

82.     Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

83.     The MENOPAUSE THE MUSICAL® mark has become famous and distinctive in New York through Plaintiffs' continuous and exclusive use of the mark in connection with Plaintiffs' services and goods.

84.     Because Plaintiffs' services have gained a reputation for excellence, the MENOPAUSE THE MUSICAL mark, which is always used in connection with Plaintiffs' services defined above, have gained substantial fame, renown, and goodwill in New York.

85.     Defendants' use of MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MSUICAL has caused and continues to cause irreparable injury to and dilution of the Plaintiffs' MENOPAUSE THE MUSICAL marks' distinctive quality in violation of Plaintiffs' rights under NY Gen. Bus. Law §360-L.  Defendants' use of MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE

MUSICAL dilutes and tarnishes the distinctiveness of Plaintiffs' MENOPAUSE THE MUSICAL mark.

86.     As a direct and proximate result, Plaintiffs have suffered and continues to suffer irreparable harm to its valuable MENOPAUSE THE MUSICAL mark.  Unless the MENOPAUSE THE MUSICAL and THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL names are removed from all signage, advertising, websites, content, and marketing materials, Plaintiffs will continue to be irreparably harmed.

87.     Plaintiffs have no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if the signage, advertising, websites, content and marketing materials are not removed.

## COUNT VII
## False Advertising 41 U.S.C. §1125(a)(1)

88.     Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

89.     Defendants used a false and disparaging quote and falsely indicated that the quote came from The Huffington Post.

90.     Upon information and belief, no bona fide writer, employee or critic of The Huffington Post made a review of or comparison between the MENOPAUSE THE MUSICAL show and THE MANOPAUSE BOYS show and therefore, such quote used by Defendants is untrue, inaccurate and misleading.

91.     Upon information and belief, Defendants arranged for the writer of the article posted on Huffington Post to write the article and further upon information and belief, Defendants paid for or otherwise compensated the writer of the Huffington Post article.

92.     Thus, Defendants have knowingly and intentionally deceived consumers to believing that a bona fide theatre critic of The Huffington Post made the disparaging quote shown in Exhibit C.

93.     Upon information and belief, the quote "Funnier than Menopause The Musical" utilized by Defendants in Defendants' marketing materials and Defendants' website for _The Manopause Boys_, is false and was not sponsored or approved by The Huffington Post.

94.     By indicating that the Huffington Post made the review when instead the writer was not an employee or authorized to speak for the Huffington Post, Defendants have misrepresented that the Huffington Post approved of the show when in fact it was not the Huffington Post and instead a writer who posted an article online.

95.     The foregoing actions by Defendants have caused harm to Plaintiff and its brand and have given Defendant's show a salable character it would not otherwise have without the disparaging quote.

96.     These false and misleading advertising practices which misrepresents the nature, characteristics or qualities of Defendants' goods and services and commercial activities in violation of 41 U.S.C. §1125(a)(1)  have caused damage to Plaintiffs.

**COUNT VIII**
**Deceptive Trade Practices – NY Gen. Bus. Law. §349**

97.     Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

98.     Defendants used a false and disparaging quote and falsely indicated that the quote came from The Huffington Post.

99.     Upon information and belief, no bona fide writer of critic of The Huffington Post made a review of or comparison between the MENOPAUSE THE MUSICAL SHOW and THE

17

MANOPAUSE BOYS show and therefore, such quote used by Defendants is untrue, inaccurate and misleading.

100.    Thus, Defendants have knowingly and intentionally deceived consumers to believing that a bona fide theatre critic of The Huffington Post made the disparaging quote shown in Exhibit C.

101.    Upon information and belief, the quote "Funnier than Menopause The Musical" utilized by Defendants in Defendants' marketing materials and Defendants' website for *The Manopause Boys*, is false.

102.    Therefore, defendant's conduct also violated NY PEN §156 *et seq* which is a deceptive act or practices within the meaning of NY Gen. Bus. Law. §349.

103.    The prior counts to the complaint herein allege further deceptive acts and practices of the Defendant which violate NY Gen. Bus. Law. §349.

## COUNT IX
## Unfair Competition

104.    Plaintiffs repeat and reallege the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

105.    Defendants' acts complained herein amount to a bad faith misappropriation of the labor, skill, expenditures and proprietary property of Plaintiffs.

106     Defendants have *inter alia*: used a confusingly similar brand; copied Plaintiffs' trademark, trade dress and passed it off as its own; and falsely advertised illegitimate reviews.

107.    At all times relevant to the Complaint, defendant's conduct was intentional and purposely directed at Plaintiffs.

108.    Such conduct was done in bad faith and amounts to unfair actions by Defendants.

18

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     An order immediately and permanently enjoining Defendants, its officers, members, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them, from:

     i.     copying or using any trade dress and/or trademarks of Plaintiffs;

     ii.     advertising, marketing, promoting, selling or otherwise offering for sale any good or service that is confusingly similar to Plaintiff's MENOPAUSE THE MUSICAL mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto, including THE MANOPAUSE BOYS and MANOPAUSE THE MUSICAL;

     iii.     making or employing any other commercial use of Plaintiffs' MENOPAUSE THE MUSICAL mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

     iv.     using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' services or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiff;

     v.     using MENOPAUSE THE MUSICAL or MANOPAUSE THE MUSICAL as a keyword or metatag in any of its websites and domains;

vi.      doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead marketers, advertisers, purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendants come from Plaintiffs, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiffs;

vii.     otherwise competing unfairly with Plaintiffs in any manner;

viii.    using the quote "Funnier than Menopause The Musical" in any and all advertisements and marketing materials;

ix.      referencing The Huffington Post or suggesting that The Huffington Post made a legitimate quote "Funnier than Menopause The Musical" in any and all advertisements and marketing materials;

x.       operating Defendants' social media sites for The Manopause Boys, or any other sites that is a derivation or colorable imitation of MENOPAUSE THE MUSICAL, or any domain confusingly similar thereto; and

xi.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) through (x), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (x);

B.      Direct Defendants to destroy each and every copy of all advertisements and marketing materials that contain the trademark MENOPAUSE THE MUSICAL.

C.      Direct Defendants to transfer the Defendants social media accounts for THE MANOPAUSE BOYS, and any other domain or social media account owned by Defendants that is a derivation or colorable imitation thereof, or any domain confusingly similar thereto, to Plaintiff.

D.      That a judgment be entered that Defendants have infringed the Plaintiffs' mark in violation of 15 U.S.C. § 1114 and has created a likelihood of confusion and damaged Plaintiffs' goodwill.

E.      That a judgment be entered that Defendants have unfairly competed with Plaintiffs by the acts complained of herein in violation of in violation of 15 U.S.C. § 1125(a).

F.      That a judgment be entered that the acts of Defendant constitute unfair competition and trademark infringement in violation of the common law of the State of New York.

G.      That Defendant be ordered to account and pay Plaintiffs all profits derived as a result of the activities complained of herein.

H.      That Defendant be ordered to pay to Plaintiffs damages sustained as a result of the activities complained of herein.

I.      That Defendant be ordered to pay punitive damages.

J.      That Defendant be ordered to pay increased damages due to its willful infringement.

K.       That Defendant be ordered to pay Plaintiffs' reasonable attorneys' fees and costs incurred in this action.

L.      That Plaintiffs be awarded such other and further relief as may be contemplated by statute law and/or equity and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  Stamford, Connecticut              ST. ONGE STEWARD JOHNSTON & REENS LLC
       May 18, 2018

                                           s*/Gene S. Winter/*
                                         Gene S. Winter, Esq. (GW6798)
                                         Jonathan S. Winter, Esq. (JW4345)
                                         986 Bedford Street
                                         Stamford, Connecticut 06905-5619
                                         Telephone: (203) 324-6155
                                         Facsimile: (203) 327-1096
                                         Email:  gwinter@ssjr.com
                                                      jwinter@ssjr.com
                                                      litigation@ssjr.com

                                         *Attorneys for Plaintiffs*